Birchard, J.
The first question in this case grows out of a tax sale, and the decision of it will settle the merits of this controversy.
A tax deed was the only title held by George F. Whitaker when he conveyed to Hubbard, and the only interest in the land, which Hubbard acquired from him, was the tax title. Unless it was valid, no legal estate was conveyed to Hubbard, and the respondents have no rights except such as flow from the covenants-contained in George E. Whitaker’s deed. Whether these covenants operate to their benefit, so as to secure a title by reason of the deed subsequently made to George F. Whitaker, will be considered hereafter. The tax deed recites a sale of “ 120 acres in the Whitaker reserve, in township five, range fifteen.” The whole reserve *284 contained 1,280 acres. The deed does not inform us what part of the tract of 1,280 acres was delinquent, forfeited, or sold. And, if it was available, it would entitle the grantee to claim as well one portion of the tract as any other. It also recites a sale
*of 120 acres, and purports to convey 140 acres.
The lands were listed in the name of Elizabeth Whitaker. The portion of the tract in question had been previously conveyed to Isaac Whitaker. How do we know that it was Isaac’s portion of the tract, and not the part belonging to Elizabeth, which was sold? Certainly not from anything connected with the tax sale. The defects run through the proceedings in the auditors’s office, and the tax title may be laid out of view, so far as its validity is in question. The cases cited by complainant, in 2 Ohio, 287; 5 Ohio, 458; 6 Ohio, 391, and 10 Ohio, 556, are in point.
Whether the subsequent passing of the legal title, through George F. Whitaker, will inure to the benefit of Hubbard, by reason of the covenants contained in Whitaker’s deed, is the material and remaining question in the case. It will be observed that a mere naked legal title was all that ever passed through him. Burchard was the purchaser, and the title was conveyed to George F. Whitaker, as a matter of. convenience. Taking the title, then, as between the two, the law constituted George F. a mere trustee of the naked legal title. A trust resulted to Burchard, whose money was paid to the bona fide owner. Had George F. Whitaker acquired for himself the legal and equitable title, he would, by reason of the warranty contained in his deed, have been es-topped at law from denying the title of Hubbard, and, in chancery, his conveyance to Hubbard would have been held binding on his conscience.
We are asked to extend and apply this rule, as against the complainant. To do so, in the state of facts here existing, would be pushing it beyond reason. The equity of the complainant is equal to that of the respondents. He had no notice of their rights; his purchase did the respondents no harm; it did not mislead them. The deed, in fact, was not delivered to George F. Whitaker, but went into the hands of Dickinson, the agent and attorney of the complainant, who received it, and delivered it to the complainant, by whom it was put on record. If the doctrine of estoppel could apply, it would vest *no better title in *285 Hubbard than George E. Whitaker himself acquired, that is, a trust-, estate.
In equity, he who is prior in time, other things being equal, hath the better right. Tried by this rule, complainant has the better equity in the lands. He purchased of the rightful owner, and paid his money. Hubbard bought of a stranger to the title. His payments were completed on June 24, 1835, at which time he took his deed from a stranger, who had nothing but a void tax title. This created no equity to the lands then owned by Isaac Whitaker. Before this time, complainant had become interested in the land by purchase, and payment of the money to Isaac, the real owner.
' True, the deed from Isaac to George E. Whitaker bears date April 12, 1835, but it was not delivered until the August following. The acknowledgment bears date the 10th of August, and Hubbard, in his answer, says he had no knowledge of it. Hubbard’s equity in the land, if he have any, can only date from the time George E. Whitaker received a legal title. It commenced with the delivery of Isaac’s deed to George E. Whitaker ; not with the delivery of George’s deed to Hubbard. Before this, Burchard had acquired an equity which chancery would have enforced as against Isaac, the real owner. And it would be strange, if Isaac’s subsequent deed, given without consideration on the part of George E., could, by operation of law, vest a title that would defeat him.
Is it doubted, if George E. had refused to convey, under these circumstances, that equity would have compelled him? He having made such conveyance, it must be held operative, and Burchard’s equity being prior in time, his title should be quieted.
Decree for complainant.